UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:15-CV-45-TBR

TIME WARNER CABLE MIDWEST LLC                                                                 PLAINTIFF

v.

PENNYRILE RURAL ELECTRIC COOPERATIVE CORPORATION                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Time Warner Cable Midwest LLC's motion for temporary restraining order and preliminary injunction. (Docket #4). Defendant Pennyrile Rural Electric Cooperative Corporation has filed a response. (Docket #7). Plaintiff has filed a reply. (Docket #8). For the following reasons, Plaintiff's motion (Docket #4) is DENIED.

BACKGROUND

Plaintiff Time Warner Cable Midwest LLC ("Time Warner") is a cable and telecommunications service provider. To deliver these services, Time Warner must attach its own cables and equipment to utility poles across the nation. Time Warner pays rental fees to the utility companies that own these poles.

Defendant Pennyrile Rural Electric Cooperative Corporation ("Pennyrile") owns poles in several Western Kentucky counties. In 2007, Pennyrile executed a Joint Use Agreement with New Wave Communication ("New Wave"). (Docket #1-1). The agreement allowed New Wave to attach equipment to Pennyrile's poles in Logan, Muhlenberg, and Christian counties in exchange for a rental fee. In 2011, Time Warner assumed New Wave's rights and obligations under the agreement.

1

For approximately two years, Time Warner has objected to the rental fees charged by Pennyrile. Rental fees are generally charged per pole. Pennyrile charges Time Warner $29.97 per pole. Time Warner claims similar entities charge "in the range of $4-$12." (Docket #1). Time Warner has paid Pennyrile $7.50 per pole "under protest" while allowing Pennyrile to "cash the check without prejudicing any argument that TWC still owes additional monies." (Docket #1-2).

Time Warner[1] also petitioned the Kentucky Public Service Commission ("Commission") asking the Commission to affirm its "exclusive, 'broad,' and 'unquestionable' jurisdiction to regulate pole attachments rates." (Docket #1). Time Warner argues that if the Commission "affirms its jurisdiction, Pennyrile and other TVA cooperatives will be required to follow the Commission's pole rate methodology." (Docket #1). This petition has been pending before the Commission for approximately two years.

Pennyrile has regularly sent Time Warner invoices for the growing difference between Pennyrile's charged rate of approximately $30 and Time Warner's paid rate of $7.50. This difference has grown to approximately $150,000. Pennyrile sent Time Warner an invoice for this amount on January 27, 2015. On February 19, 2015, Pennyrile sent a letter which stated: "[i]f Pennyrile has not received payment in full from you by February 27, 2015 at 9:00 a.m. central standard time, Pennyrile will begin removal of all equipment and facilities attached to its poles within its territory." (Docket #1-3). Time Warner claims it did not initially receive the February 19 letter because it was sent to an address in Sikeston, Missouri. Time Warner learned of the dispute from a news report.

---

[1] More precisely, Time Warner is a member of the Kentucky Cable Telecommunications Association, which petitioned the Commission. (Docket #4-4).

Time Warner now argues that Pennyrile is in breach of the Joint Use Agreement for failing to provide a thirty-day notice before removing Time Warner's equipment. Time Warner argues Pennyrile's actions will cut off "cable, Internet, and digital phone service to thousands of TWC subscribers in Pennyrile's service area." (Docket #4). Time Warner claims the publication of this dispute has "already inflicted substantial harm on TWC, including irreparable harm to its goodwill and reputation." (Docket #4). Time Warner asks for a preliminary injunction to prevent Pennyrile from cutting off Time Warner's service until the Kentucky Public Service Commission makes a ruling.

## STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *see also Summit County Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550-51 (6th Cir. 2004). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). The movant "must address each of the factors regardless of its strength, and provide us with facts and affidavits supporting these assertions." *Ohio ex rel. Celebrezze v. Nuclear Regulatory Com.*, 812 F.2d 288, 291 (6th Cir. 1987). The decision whether to grant a preliminary injunction is within the discretion of the court. *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).

## DISCUSSION

The Court considers the following factors in deciding whether to grant Time Warner's request for a preliminary injunction: (I) Time Warner's likelihood of success on the merits; (II)

the likelihood of irreparable harm and the balance of equities; and (III) the injunction's impact on the public interest.

## I. Time Warner's likelihood of success on the merits.

The first factor is the likelihood that Time Warner will succeed on the merits of its claim. While the movant "need not always establish a high probability of success on the merits," the "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id*. "Thus, a stay may be granted with either a high probability of success and some injury or vice versa." *Ohio ex rel. Celebrezze*, 812 at 290; *Griepentrog*, 945 F.2d at 153 ("Simply stated, more of one excuses less of the other"). However, at a minimum, the movant "is always required to demonstrate more than the mere 'possibility' of success on the merits." *Griepentrog*, 945 F.2d at 153.

There are two issues disputed by the parties. Time Warner has a narrow claim that Pennyrile did not provide thirty days' notice. The parties' larger dispute is over the proper pole rate. The Court will first discuss the parties' general dispute before turning to the narrow issue of notice.

The parties overarching disagreement is over the rate Time Warner must pay Pennyrile per pole. Pennyrile has set that rate at approximately $30 per pole. Time Warner has paid $7.50 per pole, arguing this is a reasonable rate. There are multiple reasons to doubt why Time Warner will ultimately prevail on this issue. First, Time Warner must convince the Kentucky Public Service Commission[2] that the Commission, and not the Tennessee Valley Authority ("TVA"),

---

[2] In general, the "Commission has jurisdiction over the utility companies, and that jurisdiction extends to their poles and the 'services' and 'rates' generated by pole attachment agreements." *Kentucky CATV Asso. v. Volz*, 675 S.W.2d 393, 396 (Ky. App. 1983). The question now

4

has authority over Pennyrile. The Commission initially reached "the conclusion in the June 28 Order that the Commission's jurisdiction is preempted by the TVA." (Docket #7-4). The Commission granted a motion for a rehearing on this issue, and the Commission's decision is still pending. Therefore, Time Warner's first hurdle is for the Commission to reverse its previous holding and find that it does have authority to regulate Pennyrile. If the Commission decides it does have jurisdiction to regulate Pennyrile, Time Warner must then successfully persuade the Commission that Pennyrile's rates are excessive. Finally, Time Warner would need to convince the Commission to retroactively reduce Pennyrile's rates to cure Time Warner's failure to pay approximately $150,000 in charges. While it is possible that Time Warner will succeed in each of these steps, there is not a "strong" likelihood that Time Warner will do so. *Summit County Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550-51 (6th Cir. 2004).

The narrow issue in this case is whether Pennyrile gave Time Warner proper notice of default before Pennyrile would cut off Time Warner's service. For over a year, Pennyrile has sent Time Warner invoices showing an overdue amount, several of which are marked "Final Notice." (Docket #7-3). As early as March, 2014, the parties discussed via e-mail the overdue bill and Time Warner's dispute with the rate. (Docket #7-3). Time Warner was clearly aware of the rate dispute and arguably aware that it was in default of the Joint Use Agreement for not paying $30 per pole.

The parties dispute how the notice provision of the Joint Use Agreement should be interpreted. The termination clause in the Joint Use Agreement states:

---

pending before the Commission is whether their general authority is preempted by the TVA's authority.

> If Licensee shall fail to comply with any of the provisions of this agreement including the specifications hereinbefore referred to, or defaults in any of its obligations in this agreement and shall fail within thirty (30) days after written notice from Licensor to correct such default or noncompliance, Licensor may, at its option, forthwith terminate this agreement or the permit covering the poles as to which such default or noncompliance shall have occurred.  In the event that the Licensor terminates this agreement, in whole or in part, the Licensee shall within thirty (30) days remove its facilities, and in the event that the Licensee does not remove its facilities within thirty (30) days, the Licensor may do so, the removal costs to be borne, in any event, by the Licensee.  (Docket #4-3).

Time Warner interprets the first sentence as requiring Pennyrile to provide thirty days' notice of default and the second sentence as requiring Pennyrile to give an additional thirty days' notice before removing Time Warner's equipment. (Docket #4).   Pennyrile interprets the clause as requiring thirty days' notice before Pennyrile can terminate services, with the second sentence merely providing the timeframe in which Time Warner must physically remove its equipment.  Although Time Warner has provided a plausible interpretation of the Joint Use Agreement, it does appear that a plain reading on the termination clause supports Pennyrile's interpretation.  In other words, the clause appears to require only that Pennyrile give thirty days' notice of default, and if Time Warner does not cure within that time, Pennyrile may cut off service "at its option."  At best, Time Warner's interpretation would provide Time Warner with another thirty days to remove its facilities from the poles.  The Court will not decide this issue until the parties have fully briefed it, nor is the factual issue of whether Pennyrile's invoices constituted "notice" resolved.  However, at this time, the Court find Time Warner has not shown a strong likelihood of success on the merits of this claim.

## II.     The likelihood of irreparable harm and the balance of equities.

Whether plaintiff will suffer an irreparable harm is significant, and possibly determinative, factor in whether a court may grant a preliminary injunction.  *Friendship*

*Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982).[3] The "the harm alleged must be both certain and great, rather than speculative or theoretical." *Ohio ex rel. Celebrezze*, 812 F.2d at 290. "[E]conomic loss does not constitute irreparable harm, in and of itself." *Id.*

Time Warner argues it will suffer irreparable harm if Pennyrile discontinues Time Warner's service. Specifically, Time Warner will lose goodwill and customers if it is no longer able to provide telecommunications services. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) ("The likely interference with customer relationships . . . is the kind of injury for which monetary damages are difficult to calculate").

In response, Pennyrile notes that Time Warner need merely pay the overdue bill to eliminate the risk of losing customers and goodwill. If Time Warner does so, the only potential harm to Time Warner is having overpaid, a purely monetary harm. *See Eberspaecher N. Am., Inc. v. Van Rob, Inc.*, 544 F. Supp. 2d 592, 603 (E.D. Mich. 2008) ("ENA can pay Van-Rob its requested prices and pursue a breach of contract action against Van-Rob for money damages"); *see also Essroc Cement Corp. v. CPRIN, Inc.*, 593 F. Supp. 2d 962, 970 (W.D. Mich. 2008).

The Court agrees with Pennyrile that Time Warner may pay the overdue bill and convert any potential harm to monetary damages. Time Warner argues that even if it does pay Pennyrile,

---

[3] *Compare Friendship Materials,* 679 F.2d at 105 ("A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury to the party seeking the injunction, and such an injunction must be vacated on appeal") *with Griepentrog*, 945 F.2d at 153 ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together").

it will not have an adequate remedy because Pennyrile may not be required to issue a refund. (Docket #8). However, the Court is not convinced the if the Commission retroactively reduced Pennyrile's rates – a prerequisite to Time Warner receiving a refund – it would not also require Pennyrile to actually refund Time Warner that amount.

Time Warner has failed to show an irreparable harm, and this factor weighs heavily against granting a preliminary injunction. *Lucero v. Detroit Pub. Sch.*, 160 F. Supp. 2d 767, 802 (E.D. Mich. 2001) ("A showing of 'probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction'") (citation omitted).

The Court finds any remaining balance of equities do not weigh heavily in favor of either party. Both parties accuse the other of precipitating this dispute by their obstinence. Time Warner accuses Pennyrile of charging excessive rates and forcing Time Warner to seek redress through the Commission and courts. Time Warner also accuses Pennyrile of seeking "self-help" in cutting off Time Warner's services. (Docket #8). Pennyrile accuses Time Warner of unilaterally setting its own rates and not waiting for the Commission to make a decision. Pennyrile argues its other ratepayers would be harmed by Time Warner's failure to pay the approximately $150,000 owed. (Docket #7). Time Warner points out that Pennyrile has annual revenue in excess of $100 million and that $150,000 is unlikely to affect Pennyrile's rates. (Docket #8). None of these present a compelling reason why the remaining balance of equities are in either party's favor.

### III.   The injunction's impact on the public interest.

The final factor is whether an injunction would serve the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy

8

of injunction." *Winter*, 555 U.S. at 24 (*quoting Romero-Barcelo*, 456 U.S. 305, 312 (1982)). This factor weighs in favor of an injunction. Time Warner provides multiple services – internet, phone, and cable – which are vital to customers. The sudden loss of these services would be disruptive to the public. Conversely, Pennyrile's argument that allowing Time Warner to set its own rates "could lead to rampant lawlessness" is a minimal threat. (Docket #7).

In balancing these factors, the Court finds that Time Warner has not demonstrated a strong likelihood of success or an irreparable injury. While an injunction may adversely impact the public, this factor does not outweigh the first two, and therefore an injunction is not warranted.

## CONCLUSION

IT IS HEREBY ORDERED that, for the foregoing reasons, Plaintiff's motion for temporary restraining order and preliminary injunction (Docket #4) is DENIED.

IT IS FURTHER ORDERED that a telephonic conference is scheduled for Friday, March 27, 2015 at 11:00 a.m. central time. The Court shall place the call to counsel.

cc: counsel of record