UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:15-CV-45-TBR

TIME WARNER CABLE MIDWEST LLC                                                PLAINTIFF

v.

PENNYRILE RURAL ELECTRIC COOPERATIVE CORPORATION            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Pennyrile Rural Electric Cooperative Corporation's motions to dismiss. (Docket #11, 21). Plaintiff Time Warner Cable Midwest LLC has filed a response. (Docket #22). Defendant has replied. (Docket #23). For the following reasons, Defendant's motions to dismiss (Docket #11, 21) are GRANTED in part and DENIED in part.

BACKGROUND

Plaintiff Time Warner Cable Midwest LLC ("Time Warner") is a cable and telecommunications service provider. To deliver these services, Time Warner must attach its own cables and equipment to utility poles across the nation. Time Warner pays rental fees to the utility companies that own these poles.

Defendant Pennyrile Rural Electric Cooperative Corporation ("Pennyrile") owns poles in several Western Kentucky counties. In 2007, Pennyrile executed a Joint Use Agreement (the "Agreement") with New Wave Communication ("New Wave"). (Docket #1-1). The Agreement allowed New Wave to attach equipment to Pennyrile's poles in Logan, Muhlenberg, and Christian counties in exchange for a rental fee. In 2011, Time Warner assumed New Wave's rights and obligations under the Agreement.

1

For approximately two years, Time Warner has objected to the rental fees charged by Pennyrile. Rental fees are generally charged per pole. Pennyrile charges Time Warner $29.97 per pole. Time Warner claims similar entities charge "in the range of $4-$12." (Docket #1). Time Warner has paid Pennyrile $7.50 per pole "under protest" while allowing Pennyrile to "cash the check without prejudicing any argument that TWC still owes additional monies." (Docket #1-2).

Time Warner[1] also petitioned the Kentucky Public Service Commission ("Commission") asking the Commission to affirm its "exclusive, 'broad,' and 'unquestionable' jurisdiction to regulate pole attachments rates." (Docket #1). Time Warner argues that if the Commission "affirms its jurisdiction, Pennyrile and other TVA cooperatives will be required to follow the Commission's pole rate methodology." (Docket #1). This petition has been pending before the Commission for approximately two years.

Pennyrile has regularly sent Time Warner invoices for the growing difference between Pennyrile's charged rate of approximately $30 and Time Warner's paid rate of $7.50. This difference has grown to approximately $150,000. Pennyrile sent Time Warner an invoice for this amount on January 27, 2015.

On February 19, 2015, Pennyrile sent a letter which stated: "[i]f Pennyrile has not received payment in full from you by February 27, 2015 at 9:00 a.m. central standard time, Pennyrile will begin removal of all equipment and facilities attached to its poles within its territory." (Docket #1-3). Time Warner claims it did not initially receive the February 19 letter because it was sent to an address in Sikeston, Missouri.

---

[1] More precisely, Time Warner is a member of the Kentucky Cable Telecommunications Association, which petitioned the Commission. (Docket #4-4).

Also on February 19, Pennyrile issued a press release which was published on ClarksvilleNow.com. This press release claimed Time Warner had failed to pay past bills and that if Time Warner did not pay by February 27, then Pennyrile would "disconnect Time Warner's equipment within its nine county service area." (Docket #16-5). Pennyrile also "request[ed] that cable company customers contact Time Warner Cable and urge them to settle this matter before services are affected." (Docket #16-5).

Time Warner filed this lawsuit, claiming Pennyrile is in breach of the Joint Use Agreement, committed libel per quod, and tortuously interfered with Time Warner's business, among other claims. (Docket #16). Time Warner also requested a preliminary injunction to prevent Pennyrile from cutting off Time Warner's service until the Kentucky Public Service Commission makes a ruling.

On March 20, 2015, this Court denied Time Warner's motion for a preliminary injunction. (Docket #12). Pennyrile now moves to dismiss all of Time Warner's claims.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material

3

elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

Pennyrile argues this Court lacks subject matter jurisdiction over this dispute. The Court will first address the (I) jurisdiction argument. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990) ("we are bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction"). The Court will then address Pennyrile's argument that Time Warner has failed to state a claim for (II) breach of contract; (III) breach of implied covenant of good faith and fair dealing; (IV) unjust enrichment; (V) tortious interference with a prospective business advantage; (VI) libel; and (VII) the Declaratory Judgment Act.

### I.   Jurisdiction.

Pennyrile argues this Court lacks jurisdiction over this case because the amount in controversy does not exceed $75,000. "For diversity jurisdiction, 28 U.S.C. § 1332 requires that the 'matter in controversy exceed . . . the sum or value of $ 75,000, exclusive of interest and costs.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001); *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (including attorneys' fees where provided for by agreement). "The amount in controversy for federal diversity jurisdiction purposes is determined as of the time the action is commenced." *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir*, 895 F.2d at 269. "The general rule is that the amount claimed in good faith by the plaintiff controls unless it appears to a legal certainty that the claim is for less than the jurisdictional

amount or unless the amount claimed is merely colorable." *Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir. 1983).

It its complaint, Time Warner seeks compensatory damages, declaratory relief, and injunctive relief which "exceeds $75,000." (Docket #1, 16). Pennyrile argues this request is merely colorable and that "Time Warner fails to support its claim with any alleged facts." (Docket #21). The Court finds Time Warner has pled sufficient facts. For instance, Time Warner asserts that Pennyrile has unjustly demanded $144,955.88 in disputed fees. (Docket #1, 16). While Pennyrile disputes the legal basis of this claim, it does not dispute this amount. Therefore, this claim alone satisfies the amount-in-controversy requirement. In addition, Time Warner asserts it has suffered the "loss of customer relationships, lost profits, and goodwill" and request compensatory, declaratory, and injunctive relief.[2] (Docket #16). Pennyrile objects that Time Warner has not identified specific lost customers or calculated damages, but Time Warner is not required to do so at this stage. "Absolute certainty is not required." *Worthams,* 533 F.2d at 997 (citation omitted). "It is sufficient if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Id.*; *see also* s *Miller-Bradford & Risberg, Inc. v. FMC Corp.*, 414 F. Supp. 1147, 1149 (E.D. Wis. 1976). This is not a case where it has been proven to a "legal certainty" that Time Warner's claims fall below $75,000. *Cf. Sellers*, 701 F.2d at 579 (6th Cir. 1983) ("as a legal certainty, appellant was only entitled to $9,875 in benefits"); *see also Wells v. Insurance Co. of North America*, 452 F. Supp. 304, 305 (E.D. Tenn. 1978). Accordingly, Time Warner has met the amount-in-controversy requirement.

---

[2] For actions seeking injunctive or declaratory relief, the amount in controversy is measured by "'the value of the object of the litigation.'" *Northup Props., Inc. v. Chesapeake Appalachia*, L.L.C., 567 F.3d 767, 770 (6th Cir. 2009) (*quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).

## II. Breach of Contract Claim.

"Under Kentucky law, a cause of action for breach of contract must state 'the contract, the breach and the facts which show the loss or damage by reasons of the breach.'" *Western Ky. Coca-Cola Bottling Co. v. Red Bull North American, Inc.*, 2008 U.S. Dist. LEXIS 47908 (W.D. Ky. 2008) (*quoting Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952). The "interpretation of a contract is a question of law for the court." *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 792 (W.D. Ky. 2005).

Time Warner alleges Pennyrile violated Section 14 of the Agreement, which contains the notice and termination provisions. It states in full:

> If Licensee [Time Warner] shall fail to comply with any of the provisions of this agreement including the specifications hereinbefore referred to, or defaults in any of its obligations in this agreement and shall fail within thirty (30) days after written notice from Licensor [Pennyrile] to correct such default or noncompliance, Licensor may, at its option, forthwith terminate this agreement or the permit covering the poles as to which such default or noncompliance shall have occurred. In the event that the Licensor terminates this agreement, in whole or in part, the Licensee shall within thirty (30) days remove its facilities, and in the event that the Licensee does not remove its facilities within thirty (30) days, the Licensor may do so, the removal costs to be borne, in any event, by the Licensee. (Docket #16-1).

Time Warner claims that Pennyrile breached their Agreement in two similar ways. First, Time Warner claims Pennyrile failed to provide thirty-day notice before cutting off Time Warner's service. (Docket #16). Second, Time Warner claims Pennyrile threatened to "remove Time Warner's facilities" without giving Time Warner thirty days to first remove its facilities.

Neither of Time Warner's theories states a viable claim for breach of contract because neither alleges an actual breach. Time Warner concedes that Pennyrile has not terminated Time Warner's service or removed Time Warner's facilities. (Docket #16, 22). Instead, Time Warner argues Pennyrile's "threats to cut TWC's electric service and remove TWC's facilities"

constituted a breach. (Docket #22). However, the Agreement only restricts Pennyrile from terminating the contract or removing facilities without giving thirty-day notice. The Agreement does not create an obligation to provide notice that can be violated without a termination of the contract or removal of facilities.

While these threats are not a breach of contract, they may support a claim for anticipatory repudiation of a contract, which is an "overt communication" or action which "renders performance impossible or demonstrates a clear determination not to continue with performance." *Upton v. Ginn*, 231 S.W.3d 788, 791 (Ky. App. 2007) (quoting 2 U.C.C. § 2-610 (1958), Official Comment 1). Time Warner has argued as much, claiming it should be allowed "to file suit before Pennyrile actually carried out its threats" and citing anticipatory repudiation cases. (Docket #22). In light of the liberal pleading standard, the Court will allow Time Warner to amend its complaint to assert a claim for anticipatory repudiation. *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory") (emphasis in original).

### III. Breach of Implied Covenant of Good Faith and Fair Dealing.

"In every contract, there is an implied covenant of good faith and fair dealing."[3] *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). "Indeed, it may be said that

---

[3] "'Fair dealing' adds nothing to 'good faith.'" *In re Ocwen Loan Servicing, LLC*, 491 F.3d 638, 646 (7th Cir. 2007) ("The full name of the duty – 'duty of good faith and fair dealing' – could be thought ominously open-ended. But the full name is merely what is called a 'doublet,' a form of redundancy in which lawyers delight, as in 'cease and desist' and 'free and clear.'" (punctuation omitted) *Id.* (*citing* Bryan A. Garner, The Redbook: A Manual on Legal Style § 11.2(f) (2d ed. 2006)).

contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Id*. "An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights." *Farmers Bank & Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005).

"The covenant of good faith is an obligation owned by both parties, and breach of this covenant can be the basis of a viable breach of contract claim." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189 (6th Cir. 2015); *but see Peacock v. Damon Corp.*, 458 F. Supp. 2d 411, 419 (W.D. Ky. 2006) (distinguishing that "K.R.S. § 355.1-203 does impose an obligation of good faith in the performance of any contract or duty within the Kentucky Uniform Commercial Code [but] it does not create an independent cause of action").

Time Warner claims several of Pennyrile's actions violate the implied covenant of good faith. Two of these actions – failure to provide proper notice and failure to properly terminate – repeat Time Warner's breach of contract claim and are barred as duplicative. *See J. Kokolakis Contr. Corp. v. Evolution Piping Corp.*, 998 N.Y.S.2d 788, 791 (N.Y. App. Div. 2014) ("Where a contractual party is merely seeking to reap the benefits of its contractual bargain, the implied covenant breach claim will not lie as it is considered duplicative of the breach of breach of contract claim") (collecting cases). A third ground for this claim is Time Warner's argument that Pennyrile sought to "impose an annual pole attachment rate in excess of the maximum amount permitted by law." (Docket #16). However, this claim is denied as Time Warner has not identified any law which Pennyrile allegedly violated, either in its complaint or its response.[4]

---

[4] Pennyrile speculates that Time Warner meant the Kentucky Public Services Commission would rule in Time Warner's favor and declare Pennyrile's rates illegally high, but this has yet to occur.

8

Time Warner does state one valid claim for violation of the implied duty of good faith. Time Warner alleges that Pennyrile "extract[ed] a disputed pole attachment rate" from Time Warner. (Docket #16). Time Warner claims that although Pennyrile had discretion to set rates, that discretion is limited by Pennyrile's obligation "to do everything necessary to carry out their contractual obligations." (Docket #16). Pennyrile allegedly violated this duty by setting an artificially high rate. "The implied covenant of good faith and fair dealing requires a party vested with contractual discretion to 'exercise that discretion reasonably and with proper motive, and [not] arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'" *Deom v. Walgreen Co.*, 591 Fed. Appx. 313 (6th Cir. 2014) (unpublished) (applying Illinois law); *see also Humantech, Inc. v. Caterpillar, Inc.*, 2012 U.S. Dist. LEXIS 176422 (E.D. Mich. 2012); *Kinzel v. Bank of Am.*, 2014 U.S. Dist. LEXIS 11575 (N.D. Ohio 2014); *Stephenson v. Allstate Ins. Co.*, 141 F. Supp. 2d 784 (E.D. Mich. 2001). Taken in the light most favorable to Time Warner, it has stated a claim that Pennyrile set an artificially high pole rate in violation of its duty of good faith.

### IV.   Unjust Enrichment.

There are three elements to a claim of unjust enrichment:  (1) "a benefit must be conferred upon the defendant at the plaintiff's expense" (2) "the benefit must result in an appreciation by the defendant" and (3) "the acceptance of the benefit under circumstances which render its retention, by the defendant without payment of the value thereof, inequitable." *Guarantee Electric Co. v. Big Rivers Electric Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987).

Time Warner claims Pennyrile has been unjustly enriched by "demand[ing] that TWC pay an annual attachment rate of $29.97 per pole, without justifying the legality of that rate."

(Docket #16).  Pennyrile moves to dismiss Time Warner's unjust enrichment claim as duplicative of Time Warner's breach of contract claims.  "Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates *in the absence of an express contract or a contract implied in fact* to prevent a party from retaining money or benefits that in justice and equity belong to another" (emphasis in original) *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009) (citation omitted) (applying Ohio law).  Several courts applying Kentucky law have agreed that "the doctrine of unjust enrichment has no application in a situation where there has been an explicit contract which has been performed."  *Res-Care, Inc. v. Omega Health Investors, Inc.*, 187 F. Supp. 2d 714 (W.D. Ky. 2001);  *Webb v. Republic Bank & Trust Co.*, 2013 U.S. Dist. LEXIS 140135  *16 (W.D. Ky. 2013).  The parties agree that there is an enforceable contract between them.  Therefore, Time Warner may not bring an unjust enrichment claim as an alternative to its claims for breach of contract and breach of the implied covenant of good faith.  *Mitchell v. GM LLC*, 2014 U.S. Dist. LEXIS 43943 (W.D. Ky. 2014) ("Because the parties do not dispute the existence of this contract, Plaintiff is not permitted to plead claim breach of express warranty claims and unjust enrichment in the alternative").

     **V.**    **Tortious Interference with a Prospective Business Advantage.**

Under Kentucky law, a claim for tortious interference with a prospective business advantage requires: "(1) the existence of a valid business relationship or its expectancy; (2) defendant's knowledge thereof, (3) an intentional act of interference; (4) an improper motive; (5) causation; and (6) special damages." *Monumental Life Ins. Co. v. Nationwide Ret. Solutions*, Inc., 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003).

Time Warner alleged that Pennyrile interfered with Time Warner's relationship with current customers and potential customers by publishing a press release which stated Time

10

Warner's service was in danger of being interrupted and encouraging Time Warner's customers to contact Time Warner and persuade them to resolve this issue. (Docket #16). The first three elements are met. Pennyrile knew of Time Warner's relationship with its customers and allegedly intended to interfere with that relationship by posting a letter "request[ing] that cable company customers contact Time Warner Cable." (Docket #16-5).

The parties dispute whether Time Warner has alleged an "improper motive" and "special damages." There are many factors to be considered in determining whether interference should be considered improper, including: the actor's motive, the nature of the actor's conduct, the interest sought to be advanced by the actor, the interest of the other with which the actor interfered, and the relationship between the parties. *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky. App. 2005) (citing Restatement (Second) of Torts § 767 (1979)). At the pleading stage, however, it is sufficient if Time Warner has "asserted facts, which if true, would show that [defendant] acted maliciously or engaged in wrongful conduct." *Id*. Time Warner has met this burden by alleging "Pennyrile published its threats to shut down TWC's business" and attempted to "coerce TWC into paying a disputed rate." (Docket #16).

The parties also dispute whether Time Warner has sufficiently pled special damages. "If an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). There is no "hard and fast formula" for alleging special damages, and courts have reached varying conclusions. *Action Repair, Inc. v. American Broadcasting Cos.*, 776 F.2d 143, 150 (7th Cir. 1985) (comparing an insufficient pleading of "good name, reputation, and business had been injured in excess of $12,500,000" with sufficient pleadings of "specific figures of gross sales before and after the alleged defamatory publication" in one case and "mere allegation that the libel caused him to make an expenditure of money" in another case).

11

"The purpose of requiring that special damages be specifically pleaded is to put a defendant on notice that damages other than those which he is presumed to expect are being sought."[5] *Diaz Irizarry v. Ennia, N.V.*, 678 F. Supp. 957, 960 (D. Puerto Rico 1988); *see also Bowles v. Osmose Utils. Servs.*, 443 F.3d 671, 675 (8th Cir. 2006) ("the object of the rule is to guard against unfair surprise"). "Rule 9(g) does not require that the amount of special damages be pleaded, but only that the kind of special damages be specified." *United Ins. Co. v. B. W. Rudy, Inc.*, 42 F.R.D. 398, 405 (E.D. Pa. 1967) (*citing* Moore's Federal Practice, Vol. 2A, § 9.08). "[I]t will be sufficient for a plaintiff or counter-plaintiff in the statement of the claim to merely state the nature of damages and allow the damage issue to be further delineated by pre-trial discovery." *Everco Industries, Inc. v. O. E. M. Products Co.*, 63 F.R.D. 662, 666 (N.D. Ill. 1974). Time Warner's allegation of lost customers and lost profits satisfy this pleading standard. *Id.*; *see also Italiano v. Jones Chems.*, 908 F. Supp. 904, 907 (M.D. Fla. 1995) (holding allegation of "lost business opportunity" satisfied pleading standard for special damages").

## VI.   Libel.

Pennyrile also moves to dismiss Time Warner's claim for libel. Libel and slander are two halves of defamation, with the former being written and the latter being spoken. *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 FN 7 (Ky. 2015). "The requisite elements for a defamation claim are: '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'" *Id.* at 281-82 (*quoting* Restatement

---

[5] "There is no requirement that the causes of action through which special damages are sought must be pleaded with the same level of particularity as fraud or mistake, for instance, required by F.R.C.P. 9(b)" *Diaz Irizarry v. Ennia, N.V.*, 678 F. Supp. 957, 960 (D. Puerto Rico 1988).

12

(Second) of Torts § 558 (1977)). "Kentucky courts have held that language is defamatory for purposes of the first element of this test 'if it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation.'" *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 749 (W.D. Ky. 2006) (quoting *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981)).

Pennyrile argues Time Warner's defamation claim must be dismissed because Time Warner "has not indicated any specific published statement that was false." (Docket #21). "A plaintiff can bring a claim for defamation when discrete facts are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way."[6] (punctuation omitted) *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 528 (6th Cir. 2007) (*citing Green v. CBS Inc.*, 286 F.3d 281, 284 (5th Cir. 2002)); *see also Ball v. E.W. Scripps Co.*, 801 S.W.2d 684, 690 (Ky. 1990); *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) ("Hamilton's comments created a reasonable inference that they were justified by undisclosed defamatory facts"). Time Warner argues Pennyrile's press release omitted material facts such as the fact that Time Warner was paying a portion of the bill and disputing the unpaid portion. These omitted facts created the impression that Time Warner had "jeopardized its customers' service." (Docket #22). At this stage, Time Warner has pled sufficient facts to support its argument that Pennyrile used defamatory language. *See Action Repair, Inc. v. American Broadcasting Cos.*, 776 F.2d 143, 149 (7th Cir. 1985) ("doubts as to whether a statement has a potentially defamatory meaning should not be resolved in favor of the moving party at the Rule 12(b)(6) stage [but may be more appropriate] at

---

[6] This is not to suggest a defendant is "responsible for every defamatory implication a reader might draw." *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 396 (Mich. App. 1992); *see e.g. Chapin v. Greve*, 787 F. Supp. 557 (E.D. Va. 1992); *White v Fraternal Order of Police*, 909 F2d 512, 526 (CA DC, 1990).

13

the summary judgment stage, after more information can be obtained about the origin and context of the statements").

Pennyrile also argues that Time Warner's defamation claim must be dismissed because Time Warner has not alleged malice. "'Actual malice' has been defined as 'knowledge of falsity or reckless disregard for the truth.'" *E. W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 704 (Ky. App. 1978) (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974)). In construing the facts in the light most favorable to Time Warner, the presumption that Pennyrile issued a press release with false statements also supports the presumption that this action was taken knowingly or with reckless disregard for the truth.

Finally, Pennyrile argues Time Warner has not pled special damages because Time Warner has "fail[ed] to identify a single customer or any lost profits as a result of Pennyrile's actions." (Docket #23). While cases have supported this standard, *see Schoen v. Washington Post*, 246 F.2d 670 (D.C. Cir. 1957), they have generally preceded the adoption of the Federal Rules of Civil Procedure, which "liberalize the requirements of pleading so that an allegation of special damages is sufficient when it notifies the defendant of the nature of the claimed damages even though it does not delineate them with 'as great precision as might be possible or desirable.'" *Continental Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395, 397 (7th Cir. 1965) (rejecting argument that "plaintiff seeking special damages in a libel case should specify by name the customers he claims to have lost") (*quoting Schoen v. Washington Post*, 246 F.2d 670 (D.C. Cir. 1957)). This is not to say that Pennyrile cannot challenge Time Warner's claim of special damages at a later date. *See Everco Industries, Inc. v. O. E. M. Products Co.*, 63 F.R.D. 662, 666 (N.D. Ill. 1974) ("while the counter-plaintiff, unaided by pre-trial discovery, will not be required at this time to further delineate the damages it alleges in the Counterclaim, the instant

ruling should not be interpreted as a bar to any future pretrial motion . . . after adequate discovery"). However, at the pleading stage, Time Warner has met its burden. *Everco Industries, Inc. v. O. E. M. Products Co.*, 63 F.R.D. 662, 666 (N.D. Ill. 1974) ("Where, as in the instant action, the putative wrongdoing is of such a nature as to preclude at the time of filing the action the ascertainment with certainty of the amount of damages, it would be a perversion of fundamental principles of justice to deny all relief to the wronged person merely because the precise computation or manner of proof of damages is not alleged in the Complaint").

### VII.   Declaratory Judgment Act.

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)**.**  Courts are guided by several factors, including "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective." *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (*citing Omaha Property & Casualty Ins. Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir. 1991)).

Time Warner has requested declaratory relief seeking a determination of the following disputes:

> TWC disputes the lawfulness of Pennyrile's annual pole attachment rate, the amounts Pennyrile has charged for pole attachments, and the tactics Pennyrile has adopted to extract those amounts from TWC.

15

> TWC also disputes Pennyrile's attempts to extract its unlawful pole attachment rate based on violations of the Agreement, violations of the implied covenant of good faith and fair dealing. unlawful interference with TWC's existing and prospective customer relationships, and unlawful, false, and damaging characterizations of TWC in published statements.  (Docket #16).

The majority of these disputes repeat Time Warner's already stated claims for tort and breach of contract and are therefore inappropriate for declaratory relief.  "The purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights *before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract.*" (emphasis in original) *Daniels v. State Farm Mut. Auto. Ins. Co.*, 2014 U.S. Dist. LEXIS 43860 *10-11 (E.D. Mich. 2014) (citation omitted).  "Therefore, declaratory judgments do not serve a useful purpose in coercive tort actions, or in contract claims where the historical incidents giving rise to liability are finished." (punctuation omitted)  *Liberty Mut. Ins. Co. v. Wagner-Smith Co.*, 2007 U.S. Dist. LEXIS 15906 *6 (E.D. Ky. 2007); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. 2004) (explaining tort claims, which "are dependent on historical occurrences rather than ongoing conditions," are less likely that contract claims to support a declaratory action).

  The only request which does not repeat an already stated claim is Time Warner's request that this Court determine the "lawfulness of Pennyrile's annual pole attachment rate."  However, as both parties have stated, Time Warner is currently petitioning the Kentucky Public Service Commission ("Commission") to have the Commission exercise jurisdiction.   Time Warner argues that if the Commission "affirms its jurisdiction, Pennyrile and other TVA cooperatives will be required to follow the Commission's pole rate methodology." (Docket #1).  Time Warner is already pursuing this issue before a state entity, and for this Court to now rule on that issue would create undue tension between the state and federal systems.  *See Omaha Property &*

16

*Casualty Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991) ("For the federal courts to preempt the right of the state court to rule on a previously undetermined question of state law, more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing the federal court to rule first"). Accordingly, Time Warner's request for declaratory relief is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss (Docket #11, 21) are GRANTED in part and DENIED in part.